Daniel E. Garrison, AZ Bar 021495
Protego Law, PLLC
1805 N. Scottsdale Rd., Ste. 100
Tempe, AZ 85281
Tel: (480) 504-6840
dan@protegolaw.com
Proposed admittee *pro hac vice*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| In re: ) | |
| STEWART, Breandra Nicole, ) | Case No. 19-35482-KLP |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | Hearing Scheduled for 11:00am |
| ) | February 5, 2020 |

**RESPONSE AND OBJECTION TO MOTION
(1) TO COMPEL COOPERATION WITH TRUSTEE AND TURNOVER OF
INFORMATION AND (2) FOR AN ORDER TO SHOW CAUSE**

Throop Law, P.C., and Matthew S. Throop, Esq. ("Throop"), counsel to the debtor, Breandra Stewart ("Debtor") in the above-referenced chapter 7 case, by and through undersigned counsel (proposed to be admitted *pro hac vice*), hereby responds and objects to the "Notice and Motion (1) to Compel Cooperation with Trustee and Turnover of Information and (2) for an Order to Show Cause" (the "Motion") filed at docket no. 28 by Chapter 7 Trustee Jennifer J. West ("Trustee").

## I.   INTRODUCTION

Trustee's Motion seeks both an order compelling Throop's "cooperation" and "turnover" of certain information and documents, and an order requiring Throop to show cause why he should not be sanctioned for his failure to satisfy the Trustee's demands. Neither of the Trustee's demands are consistent with her legal rights, or Throop's (or the debtor's) legal obligations. Both aspects of the Motion should, therefore, be denied.

## II.   FACTS

1.   Debtor entered into a bifurcated chapter 7 engagement with Throop, as disclosed in detail in Throop's Form B2030/Rule 2016(b) disclosure ("Fee Disclosure") found at page 33-34

of Debtor's Schedules and Statements (docket no. 13). A copy of the Fee Disclosure is attached hereto as Exhibit "A".

2. Under this bifurcated engagement structure, Debtor engaged Throop to file her case pursuant to a pre-petition agreement, for which Throop waived his pre-petition fee, and then separately engaged Throop to complete her chapter 7 case under a post-petition agreement. This allowed Debtor to pay her post-petition attorney fee in installments for up to 12 months after her case was filed, from post-petition earnings or other non-estate assets. See Fee Disclosure, ¶¶ 1, 7.

3. Under this bifurcated engagement structure, Throop completed his required diligence before filing the case, but deferred actual preparation of Debtor's schedules and statements until after the case was filed. Consequently, Throop and Debtor had to determine Debtor's petition-date bank balance many days after the actual petition date.

4. Debtor's bank does not provide a running daily balance in its online presentation of account history. Accordingly, when Debtor met with Throop after the case was filed, Throop had Debtor take a "screen shot" of her online banking balance on the day that the schedules and statements were being prepared, as well as screen shots of her account activity going back to the petition date. He then added and subtracted, respectively, the deposits and other debit or withdrawal activity from the date that the balance was available back to the petition date, in order to determine the petition-date balance in the bank account. He did not prepare a spreadsheet or other formal accounting of this process; rather, he simply used a calculator to determine the petition-date balance.

5. On January 23, 2020, after a telephone conference and email exchanges between Throop's counsel and the Trustee, Throop provided copies of the screen shots referred to above, and a written explanation of how he determined the balance. The Trustee subsequently communicated that what was provided was not satisfactory because it still required her to "do the math."

6. Separately, and prior to this disclosure, Throop's counsel also directed the Trustee's attention to the Fee Disclosure, which she apparently had not previously seen, to corroborate the fact that Debtor's engagement of Throop was bifurcated as represented.

### III. LEGAL ARGUMENT

A. Trustee Has No Estate Interest in a Post-Petition Fee and Therefore Is Not Entitled to Debtor's Engagement Agreements with Throop.

In a bifurcated chapter 7 engagement where counsel has waived his pre-petition fee, the Trustee simply has no legal interest to justify compulsory production of counsel's engagement agreements. In a more traditional, prepaid chapter 7 engagement, chapter 7 trustees reasonably can require production of information about the engagement because any overcharge or technical defect in the engagement presumably can generate a recovery for creditors. Where the attorney is paid prior to the bankruptcy being filed, debtors presumably use funds that otherwise would be property of the estate.

Bifurcated chapter 7 engagements where attorneys offer "zero-down" terms and allow post-petition installment payments of post-petition attorney fees do not implicate these same concerns. While counsel is still subject to §329 reasonability challenges from the Court or the United States Trustee, a panel chapter 7 trustee has no "dog in the fight," because any potential disgorgement or disallowance does not inure to the benefit of the estate. Consequently, the terms of such a bifurcated engagement are not part of the chapter 7 trustee's charge "to collect and reduce to money the property of the estate." 11 U.S.C. § 704(a)(1). "The primary role of a chapter 7 trustee in an asset case is to liquidate the debtor's non-exempt assets in a manner that maximizes the return to the debtor's unsecured creditors." "Chapter 7 – Bankruptcy Basics," United States Courts, Services & Forms, Bankruptcy, https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-basics/chapter-7-bankruptcy-basics.

Rule 2017 corroborates this conclusion. Its provisions are divided into two, temporal periods: "Payment or Transfer to Attorney *Before* Order for Relief," see Fed. R. Bankr. P. 2017(a) (emphasis added), and "Payment or Transfer to Attorney *After* Order for Relief," id., R. 2017(b) (emphasis added). Concerning pre-petition payments to attorney, the Rule allows "any party in interest" to file a motion to "determine whether any payment of money . . . by the debtor . . . to an attorney for services rendered or to be rendered is excessive." Id., R. 2017(a). The Advisory Committee comments concerning the 1991 amendments to the rule support this reading by noting

that "[a]ny party in interest should be able to make a motion . . . because the funds or property transferred may be property of the estate."

In sharp contrast, Rule 2017(b), which deals with post-petition payments, allows only "the debtor, the United States Trustee" or the court on its "own initiative" to challenge a fee as excessive. Id. R. 2017(b). *The chapter 7 trustee simply is not allowed to challenge a post-petition fee.*

Because there is no legitimate estate interest implicated by the bifurcated engagement, there is no reason for the Trustee to be entitled to a compelled production of Throop's engagement agreements with Debtor. Indeed, the Trustee has not—and in fact cannot—produce any authority for the proposition that production of the fee agreements in this case is legally required. Although the Rules of Civil Procedure and Evidence are not directly implicated in this matter, it is instructive to note that the standard for discovery is that the sought production "is relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(2), and relevance is defined as the "tendency to make a fact more or less probable than it would be without the evidence," Fed. R. Evid. 401(a), and "of consequence in determining the action," Id. R. 401(b). The Trustee's only proffered purpose in seeking the fee agreements is "because the arrangement is unusual in that it is a post-petition arrangement which calls for a fee that is substantially higher than the typical pre-petition fee arrangement." Motion, ¶ 6 at 3. But a recovery or reduction of any portion of the fee would not benefit the estate, and the Trustee is not authorized to bring that challenge anyway. The Trustee's requested production therefore does not seek relevant evidence, and her request for an order compelling production must be denied.

  B. <u>Throop Has Produced to the Trustee Everything that Reasonably Can Be Required Concerning Debtor's Petition-Date Bank Balance</u>.

Throop has both explained to the Trustee how he and Debtor determined the petition-date bank balance, and provided the source documentation to the Trustee. He is not legally obligated to create (and the Trustee is not legally entitled to demand) a summary of how the conclusion was reached. Indeed, the Trustee has provided no legal authority for her position that Throop is obligated to create a spreadsheet or similar summary of the calculation that was made of the

petition-date bank balance. Her citation to Rule 4002(a)(4) is—at best—incomplete and—at worst—misleading. While Throop concedes that the Debtor (and, by representation, Throop himself) has a duty to "cooperate with the trustee in the preparation of an inventory, the examination of proofs of claim, and the administration of the estate," Fed. R. Bankr. P. 4002(a)(4), Rule 4002 is much more specific in terms of required documentation, and even addresses specifically the topic of bank statements:

> (b) Individual Debtor's Duty to Provide Documentation
>
> . . . .
>
> (2) Financial Information. Every debtor shall bring to the meeting of creditors under § 341, and make available to the trustee, the following documents or copies of them, or provide a written statement that the documentation does not exist or is not in the debtor's possession:
>
> . . . .
>
> (B) . . . statements for each of the debtor's depository and investment accounts, including checking, savings and money market accounts, mutual funds and brokerage accounts for the time period that includes the date of the filing of the petition . . . .

Fed. R. Bankr. P. 4002(b). Thus, Debtor's (and Throop's) only obligation is to provide the Trustee with copies of the account statements themselves, which has occurred. There is no obligation to create a separate compilation, summary or accounting. The fact that other attorneys may capitulate to the Trustee's demands in this respect does not equate to those demands having any legally enforceable effect.

### IV. **CONCLUSION**

The Trustee has no legal right to demand either the production of the fee agreements between Throop and Debtor, or the preparation of a compilation, summary or accounting of how the Debtor's petition-date bank balance was determined. Throop and the Debtor have fulfilled their legal obligations and the Trustee's Motion should be denied.

RESPECTFULLY SUBMITTED this 29th day of January, 2020,

| /s/ Matthew S. Throop | /s/ Daniel E. Garrison |
|---|---|
| Matthew S. Throop #87094 | Daniel E. Garrison, AZ Bar 021495 |
| Throop Law. P.C. | Proposed admittee *pro hac vice* |
| 530 E. Main Street, Ste. 1020 | Protego Law, PLLC |
| Richmond, VA 23219 | 1805 N. Scottsdale Rd., Ste. 100 |
| Tel: (804) 299-5222 | Tempe, AZ 85281 |
| Fax: (804) 299-5202 | Tel: (480) 504-6840 |
| matthew@throoplaw.com | dan@protegolaw.com |

## CERTIFICATE OF SERVICE

This is to certify, under penalty of perjury, that on January 29, 2020, the foregoing was emailed to:

Jennifer J. West, Esq.
Spotts Fain PC
411 East Franklin St., Ste. 600
Richmond, VA 23219
jwest@spottsfain.com

Kenneth N. Whitehurst, III
Assistant United States Trustee
Office of the United States Trustee
Norfolk Federal Building, Room 625
200 Granby Street
Norfolk, Virginia 23510
Kenneth.n.whitehurst@usdoj.gov

/s/ Matthew S. Throop